UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| DEREK WHEAT, | No. C 11-4509 MEJ |
| Plaintiff, | **ORDER RE DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| COUNTY OF ALAMEDA, *et al.*, | **Docket No. 18** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Derek Wheat brings this pro se action against Defendants County of Alameda and nine individuals employed by the County. He seeks monetary damages and injunctive relief for alleged physical abuse and civil rights violations pursuant to federal and state laws. Currently pending before the Court is Defendants' Motion to Dismiss Wheat's First Amended Complaint (FAC). Dkt. No. 18. Wheat has filed an Opposition (Dkt. No. 20), to which Defendants have filed a Reply (Dkt. No. 21). After considering the parties' arguments and the controlling legal authorities, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion as set forth below.

## II. BACKGROUND

The following factual allegations are taken from Wheat's FAC. Dkt. No. 16.

On November 14, 2008, Wheat was arrested by the Berkeley Police Department on domestic violence charges. Dkt. No. 16, FAC ¶ 17. Three days later, Wheat was transported by the Alameda County Sheriff's Office to Oakland's Wiley Manuel Courthouse for a hearing in his criminal case. *Id*. ¶ 26. While waiting for his hearing, Wheat complained to Defendant Deputy Sheriff Michael Schwartz about the delay and requested help in expediting his hearing. *Id*. ¶ 29. Schwartz and other unnamed officers responded to Wheat's complaint by physically and verbally assaulting him and then placing him in high-security restraints. *Id*. ¶¶ 29-31. When Wheat, who is African-American, asked

Schwartz why he was attacked, Schwartz allegedly referred to Wheat's Caucasian spouse and said "your wife who you beat, she reminds me of Nicole Simpson and you remind me of O.J., I don't like people who look like you doing things to people who look like her." *Id*. ¶ 32. Schwartz warned that if "you ever speak up or complain or file a grievance against me then I'll kick your fucking ass again, and send you to the greens." *Id*. ¶ 33. In an effort to cover up what he had done, Schwartz filed a false report against Wheat, claiming that Wheat had attacked him and attempted to escape. *Id*. ¶¶ 32-35. As a result, Wheat was reclassified as a high-security inmate, separated from other detainees, and placed in high-security restraints for the remainder of his detention with the Alameda County Sheriff's Office.[1] *Id*. ¶¶ 26-37.

Wheat further alleges, without reference as to time, that Defendant Deputy Sheriff Nichole Bonsteel harassed and verbally threatened him while he was being transported within the corridors of the Wiley Manuel Courthouse. *Id*. ¶ 40. On at least three separate occasions, Wheat complained that his handcuffs were applied too tightly. *Id*. He alleges that Bonsteel refused to loosen his handcuffs and instead made the handcuffs tighter, causing Wheat pain, numbing his hands, and preventing him from using the toilet in his holding cell. *Id*. Bonsteel threatened Wheat that it would only get worse if he complained again or asked to use the restroom. *Id*. When Wheat asked Bonsteel why she was doing this to him, Bonsteel explained that it was her way of inflicting "just punishment" on "assholes" like Wheat "who beat their wives." *Id*. ¶ 41.

As a result of being placed in high-security restraints, Wheat asserts that he experienced four bodily function accidents during his detention between December 4, 2008 and September 21, 2009. *Id*. ¶ 37. The high-security restraints, which were the result of Schwartz's false report, severely restricted his movement and prevented him from removing his own clothing to use the bathroom. *Id*. ¶ 36. On at least one occasion, Wheat managed to remove the restraints on his own, but officers quickly reapplied them and threatened him with physical violence and tazing if he removed the restraints again. *Id*. ¶¶ 37-39. Wheat claims that he was essentially "forced to wallow and sit in his

---

[1] Wheat alleges that he was placed in high-security restraints approximately forty times while being transported between the Santa Rita Jail and Wiley Manuel Courthouse. *Id*. ¶¶ 36-37.

2

own urine and feces until he was returned to Santa Rita Jail where he could take a shower." *Id*. ¶ 38.

On February 5, 2009, Wheat filed a grievance with the Alameda County Sheriff's Office regarding the above allegations. *Id*. ¶ 44. His grievance was denied on September 18, 2009 after being reviewed by Defendants Deputy Sheriff David Sanchas, Sheriff Gregory Ahern, Deputy County Counsel Raymond Lara, Commander of Court Services Donald Buchanan, Assistant Sheriff Casey Nice, Executive Officer-Lieutenant Allan Lamb, and County Administrator Susan Muranishi. *Id*. ¶¶ 44-47. Wheat pled no contest to a misdemeanor charge on September 21 and was released from jail on September 23. *Id*. ¶ 48.

Wheat alleges that the Sheriff's Office has a custom of placing problematic and mentally unstable officers in "back hall" positions at jails in an effort to limit their contact with the public. *Id*. ¶ 42. The County, through Sheriff Ahern, condones such policies, in part, to avoid disputes with the Deputy Sheriff's Union. *Id*. Consequently, problematic officers are not terminated and inmates and detainees are forced to deal with deputies that have psychological issues and are prone to violence. *Id*. According to Wheat, Schwartz and Bonsteel have a history of problematic behavior that the Sheriff's Office knew about and never stopped. *Id*. ¶ 43.

Wheat's FAC asserts claims under 42 U.S.C. § 1983 ("Section 1983") for violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. He also alleges various claims based on state law. Defendants move to dismiss Wheat's FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim, or in the alternative, request that Wheat amend his FAC to be more specific pursuant to Rule 12(e).

### III. LEGAL STANDARD

Courts may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability

3

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, courts must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id*. at 550. If the court dismisses the complaint, it should grant leave to amend even if no request is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## IV. DISCUSSION[2]

Pursuant to Rule 12(b)(6), Defendants move to dismiss Wheat's claims against the County, Schwartz, Bonsteel, Sanchas, Ahern, Muranishi, Lara, Buchanan, Nice, and Lamb.

**A. First Amendment Claim**

Defendants challenge Wheat's First Amendment claim on the grounds that his speech was not actually chilled by Defendants' conduct.[3] Both parties agree that the First Amendment analysis set forth in *Rhodes v. Robinson* applies to this issue. 408 F.3d 559, 567-68 (9th Cir. 2005). Under

---

[2] As a preliminary matter, the Court notes that Defendants' Reply raises arguments that were not briefed in their moving papers. *See* Dkt. No. 21. The Court does not consider these arguments. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[D]istrict court need not consider arguments raised for the first time in a reply brief."). Because the Court does not consider Defendants' newly raised arguments, it also does not consider Wheat's Surreply (Dkt. No. 27), which, according to Wheat, was only filed to address the issues raised for the first time in Defendants' Reply. The Court also does not consider either of the parties' requests for judicial notice because the documents at issue are not necessary for the purposes of this Order.

[3] In their Reply, Defendants argue for the first time that a First Amendment claim cannot be based on a theory of deliberate indifference. Reply at 10. As the Court previously explained, it does not consider arguments that a party did not raise in its moving papers.

*Rhodes*, a "viable claim of First Amendment retaliation in the prison context [requires]: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* (internal quotations marks omitted).

Defendants' Motion focuses on the fourth element and argues that Wheat's speech was not chilled because he filed a grievance with the Sheriff's Office despite Schwartz and Bonsteel's threats. But whether there is a viable First Amendment claim does not turn on Wheat having actually filed a grievance. Rather, the appropriate analysis must focus on whether "the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." 408 F.3d at 568-69 (internal quotations marks omitted); *see also Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) ("An objective standard governs the chilling inquiry; a plaintiff does not have to show that his speech was actually inhibited or suppressed . . . .") (internal quotations and citation omitted). Here, the officers' alleged verbal threats and physical attacks on Wheat may have potentially silenced a person of ordinary firmness. The fact that Wheat filed his grievance, despite the officers' threats, is irrelevant since the Court looks to the officers' adverse actions and not whether Wheat actually remained silent. As the *Brodheim* Court explained, accepting Defendants' argument would "be unjust as it would [potentially] allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* (citation and internal quotation marks omitted).[4] Accordingly, Defendants' Motion to Dismiss Wheat's First Amendment claim is DENIED.

**B. Eighth Amendment Claim**

Defendants next move to dismiss Wheat's Eighth Amendment claim on the grounds that a

---

[4] Defendants reliance on *Resnick v. Hayes* is misplaced. 213 F.3d 443, 449 (9th Cir. 2000). *Resnick* is distinguishable because there, the plaintiff alleged that prison officials postponed his hearing in retaliation for him refusing to "snitch", but he did not go on to allege an infringement of the "right to file prison grievances," nor did he allege a "chilling effect." *Id.* at 449. Here, conversely, Wheat alleges his rights were violated because the officers' actions produced a chilling effect that would have stopped an incarcerated person of ordinary firmness from exercising his First Amendment rights.

5

pretrial detainee cannot invoke the protections of this Amendment. Unlike sentenced inmates, the Eighth Amendment does not protect pretrial detainees because they have not undergone a formal adjudication of guilt. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"); *see also United States v. Lovett*, 328 U.S. 303, 317-318 (1946). Wheat concedes that he was a pretrial detainee at the time he was threatened, beaten, and deprived of access to his holding cell toilet. Opp'n at 16; FAC ¶ 48. Therefore, Wheat gives this Court no cause to examine his deprivation claims under the Eighth Amendment since he was not a sentenced inmate at the time of his allegations.

Wheat cites *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), for the proposition that there is an exception to the above rule when a defendant's actions against a pretrial detainee are punitive in nature. Opp'n at 16. This Court does not agree with Wheat, nor does *Bell* hold, that the Eighth Amendment applies to claims by pretrial detainees. The Eighth Amendment protects individuals convicted of crimes from punishment that is cruel and unusual. *Bell*, 441 U.S. at 579. Pretrial detainees do not receive this protection; they are instead protected from all "punishment" by the substantive component of the Due Process Clause. *Block v. Rutherford*, 468 U.S. 576, 583 (1984) (explaining that "the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment . . . in accordance with due process of law."). Wheat's Eighth Amendment claim is therefore not actionable, and Defendants' motion to dismiss this claim is GRANTED WITHOUT LEAVE TO AMEND since Wheat cannot cure this deficiency.

**C. Fourth and Fourteenth Amendment Claims Against the County**

Defendants argue that these claims against the County should be dismissed because Wheat fails to allege sufficient facts to show a municipal policy or custom caused him an in injury or that a deliberate action attributable to the County was the "moving force" behind the deprivation of Wheat's constitutional rights. In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury . . .

6

1 the government as an entity is responsible under section 1983." 436 U.S. 658, 694 (1978). Wheat's
2 FAC alleges that the County had a policy of knowingly exposing detainees to violent officers with
3 histories of violating detainees' constitutional rights. FAC ¶¶ 42, 53, 59, 66, 73. Wheat asserts that
4 despite notice of such violations, the County's relevant decision-makers condone such policies. FAC
5 ¶¶ 44-47. Wheat further supports his *Monell* claims by providing details about the abuse he allegedly
6 suffered while in the custody of the Sheriff's Office. FAC ¶¶ 30-37. This Court is satisfied, having
7 liberally construed Wheat's complaint, that he has pled the necessary factual allegations to establish
8 viable *Monell* claims. Defendant's Motion with respect to these claims is consequently DENIED.

**D. Fourth and Fourteenth Amendment Claims Against Individual County Defendants**

10 Defendants first contend that Wheat's claims against Defendants Sanchas, Ahern, Muranishi,
11 Lara, Buchanan, Nice and Lamb[5] should be dismissed because these individuals cannot be liable
12 under a theory of vicarious liability, and they are also entitled to qualified immunity.[6] Wheat,
13 however, does not allege that Defendants are vicariously liable for Schwartz and Bonsteel's actions.
14 Rather, he asserts that these Defendants were deliberately indifferent and failed to protect Wheat
15 from having his constitutional rights violated. This is actionable. *See Starr v. Baca*, 652 F.3d 1202,
16 1207 (9th Cir. 2011) ("[A] plaintiff may state a claim against a supervisor for deliberate indifference
17 based upon the supervisors' knowledge of and acquiescence in unconstitutional conduct by his or her
18 subordinates"). Because Defendants' vicarious liability argument is inapplicable here, their Motion
19 to Dismiss on these grounds is DENIED.

20 Defendants also seek dismissal of these claims based on the affirmative defense of qualified
21 immunity. "Dismissals on the basis of qualified immunity are generally made pursuant [to Rule] 56
22 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions." *Grose v. Caruso,* 284

---

[5] Defendants do not argue that Wheat's allegations against Schwartz and Bonsteel are insufficient for these claims.

[6] Defendants argue that a prison grievance does not confer any substantive rights upon inmates. Setting aside Wheat's status as a pretrial detainee, Defendants' argument is misplaced given that Wheat's actionable claim is not that his prison grievance was denied, but that Defendants violated his constitutional liberties, including his due process rights.

7

1 Fed.Appx. 279, 283 (6th Cir. 2008).[7]  Here, Defendants' immunity defense is based solely on their
2 Motion and Wheat's FAC.  The Court, however, needs more information to determine whether
3 Defendants are entitled to qualified immunity, an issue that will likely require a more in-depth
4 analysis of the facts.  Defendants' Motion on these grounds is therefore also DENIED.

5 The question that remains on these claims is whether Wheat's FAC contains "enough facts to
6 state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  As explained earlier,
7 a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
8 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct.
9 at 1949.  Wheat does not allege enough facts in his FAC against each of these individual County
10 Defendants to draw a reasonable inference that they acted with deliberate indifference.  Wheat's FAC
11 essentially asserts a formulaic recitation of his claims and the legal conclusion that the Defendants at
12 issue were deliberately indifferent.  *See* FAC ¶¶ 52, 58, 65, 72 (Wheat alleges that each Defendant
13 "showed deliberate indifference by failing and refusing after repeated warnings to intervene to protect
14 Plaintiff").  Wheat does not specifically explain the circumstances behind these "repeated warnings,"
15 particularly when they were made and what exactly transpired.  Defendants' Motion on these grounds
16 is therefore GRANTED WITH LEAVE TO AMEND.  If Wheat wishes to amend his claims against
17 the individual County Defendants at issue, he must allege with more detail how each of these
18 Defendants were deliberately indifferent and exactly what they did in order for them to be liable
19 under Section 1983.

20 Lastly, Defendants argue that the Fourth and Fourteenth Amendment claims against the
21 individual County Defendants in their official capacity, including Schwartz and Bonsteel, should be
22 dismissed because these claims are redundant to Wheat's claims against the County.  When claims
23 are asserted against a municipality and its employees in their official capacity, as Wheat does here,
24 the claim against the municipal officials is tantamount to a suit against the municipal entity and may

---

[7] Pursuant to Federal Rules of Appellate Procedure 28(f) and 32.1, unpublished opinions issued after January 1, 2007 may be cited.

1  be dismissed due to redundancy. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the
2  government entity receives notice and an opportunity to respond, an official-capacity suit is, in all
3  respects other than name, to be treated as a suit against the entity"). Wheat avers in his FAC that
4  each individual County Defendant "is being sued in both his individual and official capacities." FAC
5  ¶¶ 8-16. Following the holding in *Kentucky*, and because Wheat's Opposition does not address this
6  redundancy argument from Defendants, the claims against the individual County Defendants in their
7  official capacities are DISMISSED WITHOUT LEAVE TO AMEND.

**E. California State Law Claims**[8]

    1. Claims Against County

Defendants argue that Wheat's state law claims against the County should be dismissed because a public entity cannot be liable for an injury to a prisoner under Government Code section 844.6(a)(2) ("Section 844.6"). Section 844.6 provides that "a public entity is not liable for . . . [a]n injury to any prisoner." *See also Hart v. Cnty. of Orange*, 254 Cal. App. 2d 302, 306 (1967) ("In sum, [S]ection 844.6 says that a prisoner who experiences an injury which otherwise would be actionable for the reason that he is a prisoner may not recover against the public entity").[9] Here, Wheat was a "prisoner" for purposes of governmental immunity under Section 844.6 because he was in the custody of the Sheriff's Office at Santa Rita Jail under the supervision of the County. FAC ¶¶ 18-29; *see Terzian v. Cnty. of Ventura*, 24 Cal. App. 4th 78 (1994) (explaining that an arrestee who was turned over to the custody of sheriff's department deputies after an initial booking in the jail's reception area was a "prisoner" for purposes of the governmental immunity statutes). Moreover, Wheat provides no response in his Opposition to Defendants' argument that Section 844.6 immunizes

---

[8] Wheat's state law claims are for battery (fifth cause of action), coercion (sixth cause of action), negligence, (seventh cause of action), assault (eighth cause of action), breach of fiduciary duty (ninth cause of action), intentional infliction of emotional distress (tenth cause of action), and negligent infliction of emotional distress (eleventh cause of action).

[9] Section 844.6 is an immunity provision that prevails over liability imposed by any other statutes. *See Zuniga v. Housing Authority,* 41 Cal. App. 4th 82, 92 (1995); *see also Estate of Mason*, 224 Cal. App. 3d 634, 638 (1990) (explaining a specific statute takes precedence over a general statute).

the County. Because Wheat was a "prisoner" in the custody of the Sheriff's Office at the time that his alleged claims arose, the Sheriff's Office, and therefore the County, as a public entity, is immune from liability for Wheat's state law claims. Defendant's Motion is therefore GRANTED and all state law claims against the County are DISMISSED WITHOUT LEAVE TO AMEND.

### 2. Claims Against Individual County Defendants

Defendants challenge Wheat's state law claims against the individual County Defendants because Wheat fails to allege that he timely presented a claim to the County pursuant to California Government Code section 911.2(a) ("Section 911.2"). Under Section 911.2, "[a] claim relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action." *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). "[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *Id.* Where a plaintiff fails to include sufficient allegations to demonstrate that his claim was part of a timely filed government tort claim, the plaintiff's claim cannot survive as a matter of law. *Fontana v. Alpine County*, 2011 WL 676922, at *5 (E.D. Cal. Feb. 16, 2011); *see also Wood v. Riverside Gen. Hosp.*, 25 Cal. App. 4th 1113, 1119 (1994) ("The timely filing of a claim is an essential element of a cause of action against a public entity and failure to allege compliance with the claims statute renders the complaint subject to general demurrer").

Wheat's FAC does not allege that he complied with the California Tort Claims Act — and therefore exhausted his administrative remedies — by filing a timely government tort claim. In his Opposition, Wheat acknowledges that such allegations are missing from his FAC, and instead asks the Court to refer to the allegations in his original Complaint, which only provided that Wheat had complied with California Tort Claims Act. Opp'n at 2. The Court declines to do this, particularly because Wheat provides no reason why he cannot amend his FAC to include the necessary details about his compliance with the California Tort Claims Act. This will also allow the Court to properly evaluate Defendants' argument that Wheat's state law claims are time-barred, which the Court cannot currently do because it has no details about when Plaintiff allegedly filed his claim. Accordingly,

10

Wheat's state law claims against the individual County Defendants are DISMISSED WITH LEAVE TO AMEND. If Wheat chooses to amend these claims, he should attach to his new complaint the claim that he alleges he filed to comply with the California Tort Claims Act. If Wheat cannot attach such a claim, he shall provide the reason for this omission and specifically plead the details of the claim he allegedly filed (i.e., which public employees he alleged in his claim to have caused his injuries, the amount of damages he sought for his injuries in the claim, the details provided in the claim as to why the public entity and each public employee was liable, etc.).

**F. Request for Injunctive Relief**

In his prayer for relief, Wheat asks this Court for a permanent injunction requiring the County of Alameda to prohibit the shackling of inmates or institute a policy to "check-in" with shackled inmates. Defendants, relying on *Williams v. Rodriguez*, argue that this request for injunctive relief should be dismissed because Wheat is no longer in custody and the request is consequently moot. 2011 U.S. Dist. LEXIS 142118, at *21-23 (E.D. Cal. Dec. 8, 2011) ("When an inmate seeks injunctive relief concerning the prison where he or she is incarcerated, his or her claims for such relief become moot when the inmate is no longer subjected to those conditions . . . . Moreover, any award of equitable relief is governed by the Prison Litigation Reform Act"). Wheat's Opposition does not address Defendants' argument. This Court follows *Williams* and DISMISSES Plaintiff's request for injunctive relief WITHOUT LEAVE TO AMEND.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. Wheat shall file an amended complaint, in accordance with this Order, by April 30, 2012.

**IT IS SO ORDERED.**

Dated: March 21, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

11